# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| EDITORIAL PLANETA MEXICANA, S.A. DE C.V., <br><br> Plaintiff, <br><br> vs. <br><br> SHERRY ARGOV, <br><br> Defendant. | Case No.: 2:11-CV-01375-GMN-CWH <br><br> **ORDER** |

This action was filed before the Court by Plaintiff Editorial Planeta Mexicana, S.A. de C.V. ("Planeta") against Defendant Sherry Argov. Pending before the Court is Defendant's Motion to Dismiss or in the Alternative Motion to Transfer Venue to Massachusetts (ECF No. 9).

**I. BACKGROUND**

This case involves the Latin American foreign rights agreements to translate and distribute two books written by Argov – *Why Men Love Bitches* and *Why Men Marry Bitches*. (Compl., ECF No. 1.) The original Foreign Rights Agreement ("FRA") for *Why Men Love Bitches* ("2004 Love FRA") was signed in 2004 by Planeta's predecessor, Editorial Diana S.A. de C.V., and Adams Media, Argov's Massachusetts publisher. (2004 Love FRA Ex. A to Argov Aff., Ex. 1 to Def.'s Mot. to Dismiss, ECF No. 9-1.) In 2009 Adams Media assigned its rights to Argov, who then negotiated a new FRA with Planeta ("2009 Love FRA"). (Colbert Aff. ¶ 3, Ex. 2 to Def's Reply, ECF No. 14-2; 2009 Love FRA Ex. B to Argov Supp. Aff., Ex. 1 to Def.'s Reply, ECF No. 14-1.) The FRA for *Why Men Marry Bitches* ("Marry FRA") was signed between Simon & Schuster and Editorial Diana on June 23, 2006. (Marry FRA Ex. A to Compl.)

In September 2010 Argov terminated both contracts and filed a lawsuit in Massachusetts[1] citing concerns that Planeta was underreporting sales of her books. (Notice of Termination, Ex. C to Compl.; Argov Aff. ¶12, Ex. 1 to Def.'s Mot. to Dismiss.)  A year later, on August 25, 2011, Planeta filed its Complaint in this action alleging breach of contract and defamation, and seeking a declaratory judgment.[2] (Compl, ECF No. 1.)

On September 21, 2011, Argov re-filed her complaint against Planeta in the District of Massachusetts for breach of contract and copyright infringement.[3] (Argov Aff. ¶16.)  Argov filed the instant motion on October 7, 2011, arguing that Planeta's suit should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) lack of personal jurisdiction, 12(b)(3) improper venue, and 12(b)(5) insufficient service of process. (Def.'s Mot. to Dismiss, 1:17-19.)  Alternatively, Argov moves to transfer venue to the United States District Court for the District of Massachusetts (Eastern Division), pursuant to 28 U.S.C. § 1404(a). (*Id*.)

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  Under § 1404(a), courts "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org.,*

---

[1] That lawsuit was voluntarily dismissed by Argov on March 1, 2011. *Argov v. Grupo Planeta et al.*, No. 1:10-cv-11699-RGS (D. Mass. March 1, 2011).

[2] Planeta alleges that Argov then "disparaged Planeta Mexicana repeatedly in the world press," and that Argov now intends to distribute Spanish language versions of her book without Planeta, "in violation of [Planeta's] copyright in the Spanish language title for each book." (Compl. at 6-7, 2:9-10.)

[3] *Argov v. Editorial Planeta Mexicana et al.*, No. 1:11-cv-11677-JLT (D. Mass. Sept. 21, 2011).

*Inc. v. Ricoh Corp.*, 487 U. S. 22, 23 (1988) (quoting *Van Dusen v. Barrack*, 376 12 U.S. 612, 622 (1964)).  Multiple convenience and fairness factors may be weighed to determine whether transfer would be "in the interest of justice" as required by § 1404(a), including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  "Additionally, the presence of a forum selection clause is a 'significant factor'" as well as "the relevant public policy of the forum state, if any." *Id.* at 499.

A "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Although § 1404 displaced the common law doctrine of forum non conveniens for transfers between federal district courts, "forum non conveniens considerations are helpful in deciding § 1404 transfer motions." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Miskow v. Boeing Co.*, 664 F.2d 205, 207 (9th Cir. 1981), *cert. denied*, 455 U.S. 1020 (1982).  Indeed, under § 1404 courts are permitted "to grant transfers upon a lesser showing of inconvenience" than that required by the doctrine of forum non conveniens. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

## III. DISCUSSION

Without reaching the question of whether personal jurisdiction exists here, the Court finds that venue should be transferred to Massachusetts, and will grant the motion to transfer pursuant to 28 U.S.C. § 1404(a).[4]

As discussed below, the Court finds that the present action might have been brought in Massachusetts, and has considered the *Jones* convenience and fairness factors, as well as any forum selection clause or public policy concerns and the first to file rule. After weighing the relevant factors and considerations, the Court finds that Argov has met her burden and that transfer is appropriate under § 1404(a).

### A. The present action might have been brought in Massachusetts.

Pursuant to 28 U.S.C. § 1404(a), this action is one that might have been brought in Massachusetts. A district is one where a suit might have been brought if "when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant…" *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Under this standard, transfer is appropriate when venue is proper and personal jurisdiction exists over the defendant in the transferee jurisdiction. *Id.* at 343-44. For venue to be proper, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391 (b)(2).

---

[4] The Supreme Court has held that transfer of venue under 28 U.S.C. § 1406 is not "limited to actions in which the transferring court has personal jurisdiction over the defendants." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962). Courts in this circuit and district have held that the holding in *Goldlawr* extends to § 1404. *E.g.*, *Kawamoto v. CB Richard Ellis, Inc.*, 225 F.Supp.2d 1209, 1211 (D. Haw. 2002) ("many district courts . . . have concluded that a district court may also transfer an action under § 1404(a) regardless of whether it has personal jurisdiction over the defendant"); *Reed v. Brown*, 623 F.Supp. 342, 346 (D. Nev. 1985) (noting that a "district court has the power to transfer a case in which it lacks personal jurisdiction, as long as the considerations set forth in § 1404 have been satisfied"). Accordingly, this court also concludes that transfer may be granted under § 1404 without determining personal jurisdiction.

As required in *Hoffman*, venue is proper in Massachusetts because a substantial part of the events giving rise to the present claim occurred in that state. 363 U.S. 335, 344 (1960).  Argov and Planeta negotiated "all of the relevant contracts in this case through Adams Media . . . and Argov's Lawyer in Massachusetts." (Def's Mot. to Dismiss at 11:23-26; *see also,* Argov Aff. ¶ 6-7.)  Additionally, the 2009 Love FRA includes a choice of law clause delineating Massachusetts law for the resolution of disputes. (2009 Love FRA.)  Moreover, all communications between 2004 and 2009 "by and between Planeta relating to the contract and royalty payments went to Adams Media in Avon, Massachusetts." (Argov Aff. ¶ 7.)  Importantly, the notice of termination for the book contracts, which Planeta alleges to be the basis of its cause of action, was sent from Argov's attorney's office in Massachusetts. (Notice of Termination.)  Finally, Planeta argues that the assignment of the Spanish rights for *Why Men Love Bitches* to Adams Media in Massachusetts constitutes copyright infringement. (Compl. at 2:9-11; Def.'s Mot. to Dismiss at 10:22-24.)

For its part, Planeta seeks to minimize its contacts with Massachusetts.  Plaintiff provides an affidavit from Jorge Luis Cameras, General Director of Planeta, that asserts Planeta never conducted business in Massachusetts and "Planeta Mexicana never sent any document to Argov in Massachusetts." (Cameras Decl. ¶ 6, Pl.'s Resp.) Additionally, "the Agreement contains no stipulation to or waiver of objection to personal jurisdiction in Massachusetts by Planeta Mexicana." (*Id.* at ¶ 8.)  However, Planeta does not refute the assertions in Edward Colbert's affidavit that during the negotiations for the 2009 Love FRA Colbert "communicated on a number of occasions to and from [his] Massachusetts office" with Planeta. (Colbert Aff. ¶ 3.)

Planeta likewise does not refute that it communicated extensively with Adams Media or that it mailed royalty payments related to the present action "'directly to

Adams' in Massachusetts." (Argov Aff. ¶ 7; Def.'s Mot. to Dismiss, Ex. C.)  Indeed, the copyright page of all books published under the Love 2004 FRA acknowledged the connection to Massachusetts, stating in Spanish: "published under agreement with Adams Media . . . 57 Littlefield Street, Avon, MA…" (Argov Aff. ¶ 6.)

Finally, this suit might have been brought in Massachusetts because personal jurisdiction exists over her in that state.  In addition to her contacts with Colbert and Adams Media, Argov's subsequent filing of a breach of contract suit against Planeta in Massachusetts federal court, (*Id*.; *Argov v. Planeta et al*, 1:10-cv-11699-RGS, Ex. A to Pl.'s Resp.), indicates her consent to personal jurisdiction in that state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 490 n.14 (1985) ("personal jurisdiction requirement is a waivable right").  Importantly, Planeta does not dispute that personal jurisdiction exists over Argov in that forum. (*See* Pl.'s Resp.)

Because a substantial portion of the activities related to the present action occurred in Massachusetts, and personal jurisdiction exists over Argov in that state, this suit is one that could be been brought in Massachusetts.

   **B. <u>Convenience and fairness factors</u>**

Transfer of venue to Massachusetts is in the interest of justice because the convenience and fairness considerations discussed in *Jones* weigh in favor of transfer.

   **1. Massachusetts is where the relevant agreements were negotiated and executed**

The first factor under *Jones* is the location where the relevant agreements were negotiated and executed.  The negotiations for the original *Why Men Love Bitches* contract occurred between Editorial Diana, Planeta's predecessor, and Adams Media from Adams' offices in Avon, Massachusetts. (Argov Aff. ¶ 5-7; Mot. to Dismiss at 11:23-25.)  Furthermore, the 2009 Love FRA negotiations were conducted by Argov's

counsel, Edward Colbert, from his office in Boston. (Colbert Aff. ¶ 3-4.) When the "contracts were agreed upon and signed" Planeta mailed the documents to Colbert's office in Massachusetts. (Colbert Aff. at ¶ 5.) Additionally, Colbert received phone calls and emails related to contract negotiations at his Boston office on at least nine occasions during September and October 2009. (*Id.* at ¶ 4-5.) Although Plaintiff asserts that it never sent any documents to Argov herself in Massachusetts, (Pl.'s Resp. at 7:17-18), it does not dispute that it negotiated the terms of the 2009 Love FRA with Argov's attorney through his office in that forum. (*See, e.g.*, Compl.; Pl.'s Resp.)

Because the relevant agreements were negotiated on Argov's behalf by parties situated in Massachusetts, this consideration weighs in favor of transfer.

**2. Massachusetts is the state that is most familiar with the governing law**

The second *Jones* factor considers which state is most familiar with the governing law. As stipulated in the 2004 Love FRA between Editorial Diana and Adams Media as well as the 2009 Love FRA between Argov and Planeta, the parties "agreed that Massachusetts law would govern any of their disputes." (Def.'s Mot. to Dismiss at 11:25-27.) Accordingly, a Massachusetts court would be more familiar with the application of Massachusetts law. *See Decker Coal*, 805 F.2d at 843 (holding courts may consider "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"). Although Plaintiff properly points out that the choice of law provision "is not a choice of venue provision," (Pl.'s Resp. at 7:23-24), this provision is still given weight under *Jones* when determining which venue is more qualified to hear the present cause of action. 211 F.3d at 498 (court considers state "most familiar with the governing law"). The second factor favors transfer because a Massachusetts court will be more familiar with the governing law of this contract dispute.

**3. Plaintiff's choice of forum is given reduced deference**

The third factor considered under *Jones* is the Plaintiff's choice of forum. Courts generally give deference to a plaintiff's choice of venue. *Inherent.com v. Martindale-Hubbell*, 420 F.Supp. 2d 1093, 1100 (N.D. Cal. 2011) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1996)). However, deference is "substantially reduced when the plaintiff's choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." *Id.* (quoting *Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F.Supp.2d 1044, 1048 (N.D. Cal. 2001)). Additionally, "a foreign plaintiff's [forum] choice deserves less deference than the forum choice of a domestic plaintiff." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (referring to *Reyno v. Piper Aircraft Co.*, 454 U.S. 235, 237 (1981)).

Here, Plaintiff is neither a resident of Nevada nor a domestic plaintiff. (Compl. at 2:17-19.) Instead, Plaintiff is a "Mexican corporation with its principle place of business in Mexico City." (*Id.* at 2:17-19.) Furthermore, and as discussed below, Nevada lacks a significant connection to the activities alleged in the complaint. Therefore the Court gives less deference to Plaintiff's forum choice and the corresponding presumption against transfer. Instead, this Court's determination centers on the Defendant's allegations of inconvenience discussed elsewhere in this analysis. Because Plaintiff is not a resident of this state and because Nevada lacks a significant connection to the activities alleged in this complaint, this factor favors non-transfer only slightly.

**4. Defendant Argov does have some contact with this forum**

The fourth factor this Court considers is the respective parties' contacts with the forum state. Although Plaintiff claims Defendant is a resident of Nevada, (Compl. at 2:19-20), Argov alleges that she is in fact a resident of California. (Def's Mot. to Dismiss at 9:11-15.) In support of her claim of California residency, Argov provides tax receipts, electricity billing statements, insurance receipts and other evidence to demonstrate her

continued presence in California. (Ex. A to Argov's Supp. Aff.)  Additionally, both books published by Planeta specify, in Spanish, that "Sherry Argov writes for two newspapers in the area of Los Angeles, where she currently resides." (Argov Supp. Aff. at ¶ 3.)

However, the record shows that Argov does have some connection with this forum. Argov maintains a post office box in Nevada, which she listed as her address in the 2009 agreement with Planeta. (Love 2009 FRA; Pl's Resp at 2-3).  Argov also claims to be a Nevada resident in her Massachusetts suit. (*Argov*, 1:10-cv-11699-RGS, Ex. A to Pl.'s Resp.)  However, Argov asserts that her claim of Nevada residence is "a good faith representation . . . which did not come to pass" because her father became infirmed. (Def.'s Reply at 3:1-7.)

Because of her connections with Nevada, the fourth *Jones* consideration weighs against transfer to Massachusetts.  However, this factor is not accorded much weight based on the conflicting evidence.

**5. The contacts relating to Plaintiff's cause of action occurred in both forums**

The fifth factor under Jones considers the contacts relating to the Plaintiff's cause of action in this forum.  As discussed above, Defendant provided a Nevada address in the 2009 Love FRA and also received correspondence from Planeta, including tax receipts for royalty payments, in this state. (Ex. 2 to Cameras Decl.; Ex. 2 to Bravo Decl.)

However, much of the conduct relating to the present cause of action also occurred in Massachusetts.  As explained above, most of the contractual negotiations occurred through Adams Media and Edward Colbert in Massachusetts. (Def.'s Mot. to Dismiss at 6:22-23; Colbert Aff. ¶ 3-4.)  Additionally, all communications between 2004 and 2009 "by and between Planeta relating to the contract and royalty payments went to Adams Media in Avon, Massachusetts." (Argov Aff. ¶ 7.)  The notice of termination for the book contracts, which Planeta alleges to be a breach of contract, was also sent from Mr.

Colbert's office in Massachusetts. (Notice of Termination.) Finally, after terminating the agreements with Planeta, Argov assigned the Spanish language rights for *Why Men Love Bitches* to Adams Media in Massachusetts. (Mot. to Dismiss at 10:22-26.) Planeta asserts that this assignment violates its copyright on the Spanish language versions of Argov's works. (Compl. at 2:9-13.)

Because contacts relating to the present action occurred in both forums, this factor is neutral.

### 6. Litigation will be cheaper and more efficient in Massachusetts

The sixth factor considers the difference in the costs of litigation between the two forums. Most of the potential witnesses in this case reside in Massachusetts, including Colbert and three Adams Media employees who worked on the subject agreements. (Def.'s Mot. to Dismiss at 6:3-5.) Additionally, Massachusetts is likely to be the most active site for discovery because "five years of evidence," including royalty accountings from 2004-2009, exist in Massachusetts. (*Id.* at 5:13-20.) Finally, Adams Media, "which is expected to intervene and is without a doubt is a necessary party" is located in Massachusetts. (*Id.* at 10:24-26.) As a result, situating this case in Nevada would cause needless time and discovery costs for both parties as well as potential witnesses.

In opposition to transfer, Planeta alleges that any "Massachusetts nexus" is "simply not based in fact." (Pl.'s Resp. at 7:12-15.) Nevertheless, Planeta does not provide the names of any potential third-party witnesses or interested parties for trial who reside in or near Nevada. (*See* Pl.'s Compl.; Pl.'s Resp.) Furthermore, as a citizen of Mexico, either venue will be equally convenient for Planeta. Because litigation will be cheaper and more efficient in Massachusetts, this factor weighs in favor of transfer.

### 7. Availability of compulsory process to compel attendance of unwilling non-party witnesses exists in Massachusetts

The seventh of the *Jones* factors considers the availability of compulsory process to compel attendance of unwilling non-party witnesses. Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(ii) a court must quash, upon timely motion, a subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." As a result, this Court has no ability to compel the presence of the identified non-party witnesses who live in Massachusetts. (Def.'s Mot. to Dismiss at 6:3-5.) This factor weighs in favor of transfer because no known non-party witnesses exist in Nevada.

### 8. Massachusetts has greater access to sources of proof

The eighth and final *Jones* consideration weighs which forum has better ease of access to sources of proof. As explained above, three Adams Media employees who may serve as witnesses reside in Massachusetts and "five years of evidence," including royalty accountings from 2004-2009, exist in Massachusetts. (Def's Mot. to Dismiss at 5:14-20.) Additionally, Argov's original attorney and *pro hac* counsel, Edward Colbert, is also based in Massachusetts. (Argov Supp. Aff. ¶ 8; Colbert Aff. ¶ 2.) The eighth factor weighs in favor of transfer because little evidence appears to be in Nevada, and the primary location of evidence in the present case is Massachusetts.[5]

---

[5] Courts may also consider the presence of a forum selection clause or public policy concerns. *Jones*, 211F.3d at 499 & n. 21 (referring to *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) ("public-interest factors of systematic integrity and fairness")). Here, there is no forum selection clause in the agreements, and Nevada has no policy interest in adjudicating this matter. Unlike *Jones*, where the Ninth Circuit found California had a public interest in providing "protective local forum for local franchisees," 211 F.3d at 499, Planeta is not a Nevada business and Nevada has no corresponding interest in providing a protective local forum.

In determining whether transfer will further public policy concerns, courts also may consider the interests of judicial economy. *Van Dusen*, 376 U.S. at 616. Here, through combining the present action with Argov's Massachusetts suit, transfer will prevent duplicative

**C. First to file rule does not apply**

Planeta argues that the first to file rule applies in the present action because it filed the present action on August 25, 2011 while Argov filed the current Massachusetts suit on September 21, 2011. (Pl.'s Resp. at 6:24-27.) However, the Court finds that the first to file rule does not apply to the present case because transfer to Massachusetts is in the interest of sound judicial administration and because the suits are not identical.

The "first to file rule" is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). In order for this rule to apply, the issues in both suits must be "identical." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Finally, the first to file rule is not "rigid or inflexible" but is instead "to be applied with a view of the dictates of sound judicial administration." *Pacesetter Systems*, 678 F.2d at 95. Indeed, the purpose of this rule is the promotion of "judicial efficiency" but should "not be disregarded lightly." *Id.* (quoting *Church of Scientology of California v. United States Department of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)). In making this determination, trial courts are given "an ample degree of discretion, appropriate for disciplined and experienced judges…" *Id.* (citing *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)).

Here, unlike *Pacesetter Systems, Inc.*, where the first to file rule was invoked because "the goal of judicial efficiency would not have been served by accepting jurisdiction," transfer to Massachusetts of the present action would further judicial

---

litigation and prevent waste of time and money. Planeta provides no public policy rationale against transfer to Massachusetts. (*See* Compl.; Pl.'s Resp.) Therefore, because Nevada has no interest in providing a protective local forum and there is no forum selection clause these factors do not weigh against transfer.

efficiency. 678 F.2d at 96.  As discussed earlier, transfer to Massachusetts would allow the case to be tried in a court with better knowledge of the governing law and with better access to relevant evidence and witnesses.

Furthermore, as in *Alltrade*, which explained that the first to file rule is not applicable when the issues in two suits are not "identical," the issues in the Nevada and Massachusetts actions do not completely align. 946 F.2d at 625.  Although the suits arise from the same business relationship, the two parties lodge different claims relating to differing sets of facts.  Planeta alleges that Argov breached the Love 2009 FRA and Marry 2006 FRA by terminating the agreements before their expiration and then infringed on its copyrights by finding a new publisher. (Compl. at 1:23-27). Planeta also alleges defamation because Argov "disparaged Planeta repeatedly in the world press." (Compl. at 2:6-8.)  In contrast, Argov claims breach of contract and copyright infringement arising from Planeta's alleged undercounting of royalty payments from the sale of Argov's books in Latin America. (Pl.'s Resp., Ex. A.)

Because the suits are not identical and convenience favors Massachusetts, the first to file rule does not prevent transfer to Massachusetts.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss or in the Alternative to Transfer Venue to Massachusetts (ECF No. 9) is **GRANTED**.  This case is hereby transferred to the United States District Court for the District of Massachusetts.

DATED this `23` day of `July`, 2012.

_____
Gloria M. Navarro
United States District Judge